```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


DENISE M. BENJAMIN, BENJAMIN    )
A. HINONSKI and LOTTIE HINONSKI,)
                                )
          Plaintiffs            )
                                )
     v.                         )   Case No. 2:03 cv 62
                                )
CENTIER BANK, N.A., CHICAGO     )
TITLE INSURANCE COMPANY, INC.,  )
and SUZANNE F. KLEINEDLER,      )
                                )
          Defendants            )
```

OPINION AND ORDER

This matter is before the court on the Motion to Dismiss filed by the defendant, Centier Bank, on October 8, 2004; the Motion for Sanctions filed by Centier on October 8, 2004; the Motion to Dismiss filed by the defendant, Suzanne Kleinedler, on October 21, 2004; the Motion for Sanctions filed by Kleinedler on October 21, 2004; and the Motion to Set Aside Order of November 4, 2004 Granting Defendant, Suzanne F. Kleinedler's Motion to Strike Plaintiffs' Responses to Supplemental Discovery and to Deem Requests for Admission Admitted filed by the plaintiff, Denise Benjamin, on May 5, 2005.  For the reasons set forth below, the motions to dismiss and for sanctions are **DENIED**, and the motion to set aside is **GRANTED.**

Background

On February 24, 2003, Denise Benjamin and her grandparents, Lottie and Benjamin Hinonski, sued Centier Bank, Chicago Title Company, and notary Suzanne Kleinedler for alleged violations of the Truth in Lending Act, fraud, and negligence stemming from a

refinancing transaction accomplished by forgery of the plaintiffs' names by Denise Benjamin's ex-husband, Peter Benjamin.[1] Attorneys Edward Hall and John Craig originally represented all of the plaintiffs.

The defendants have had difficulty obtaining discovery in this case from the outset.  On January 13, 2004, Centier Bank provided Benjamin, through Hall, with Centier's first set of interrogatories.  Benjamin did not sign her answers to these interrogatories, which further were inadequate in response to Interrogatories 4, 5, 13, and 17.  Similarly, Kleinedler served interrogatories and requests for production on Benjamin through her attorneys on June 12, 2003, but these requests remain unanswered.

On April 20, 2004, Benjamin was traveling to her deposition when Hall advised her not to appear.  In the record made by counsel at the cancelled deposition, Hall stated that he so advised Benjamin because of a potential conflict of interest between the Hinonskis and Benjamin.  He said that he had advised Benjamin that she and/or her grandparents "may" want to get different counsel but that he would leave it up to them.  He further affirmatively stated that he would withdraw "very quickly."  (Kleinedler Mot. for Sanctions, Exh. A)

On April 29, 2004, Kleinedler served supplemental interrogatories, requests for the production of documents, and requests

---

[1] Chicago Title was dismissed from this case as a defendant on January 21, 2004 and as a cross-defendant on September 30, 2004.

2

for admissions upon Benjamin through Hall.  Although Benjamin timely responded to these requests, her responses were unsigned and inadequate in certain respects.  Consequently, by letter dated June 10, 2004, counsel for Kleinedler informed Hall of these deficiencies, which were not corrected.

   On June 14, 2004, Craig sought to withdraw as counsel for all plaintiffs, which this court granted on June 29, 2004.  On July 30, 2004, the court also granted Hall's motion to substitute counsel for the plaintiffs and ordered the substitution to be made by August 6, 2004.  However, by August 24, 2004, Hall had not substituted counsel and still was counsel of record for Benjamin.  Thus, on August 24, 2004, Centier notified Benjamin through the office of Hall that Benjamin's deposition was re-scheduled for September 27, 2004.  Neither Hall nor Benjamin appeared for the deposition.  Benjamin claims that Hall never informed her of the deposition.

   On October 1, 2004, Kleinedler filed a motion to strike Benjamin's responses to Kleinedler's supplemental interrogatories and requests for production and to deem admitted Kleinedler's requests for admission because Benjamin never corrected the deficient signatures on this discovery.  When Benjamin did not respond to the motion to strike, the court granted it.  *See* November 4, 2004 Order.  Then, on October 8 and 21, 2004 respec-tively, Centier and Kleinedler filed the motions for sanctions and dismissal that are presently before the court.  Hall, who has electronic filing, received notice of each of these motions

3

electronically.  Benjamin personally did not receive notice, presumably because Hall still was of record as her counsel.

According to Benjamin, Hall told her in October 2004 that Lottie Hinonski "remained committed to Mr. Hall representing her legal interests."  (Pl. Obj. to Centier's Mot. to Dismiss, p. 5) In late November 2004, Hall told Benjamin that he may have a conflict of interest because Hall previously had a professional relationship with her ex-husband, Peter Benjamin.  In December 2004, Benjamin agreed to seek other counsel.

On December 2, 2004, four months after this court had ordered Hall to substitute counsel for the plaintiff, Hall and attorney John Hughes notified the court that Hughes would assume representation of Benjamin.  However, Hughes withdrew as counsel on December 22, 2004, due to a personal conflict with his office. Benjamin states that after Hughes withdrew, she believed that Hall still represented her.  Hall in fact did appear at the court's status conference on January 19, 2005, at which time the court granted his oral motion to withdraw.  The court's electronic filing records indicate that Benjamin personally was not given notice of the January conference, and she did not appear. However, she was given personal notice of the court's next status scheduled for March.

Benjamin appeared at the status conference on March 22, 2005, without an attorney.  She states that at this conference she was told for the first time of the court's November 4, 2004

4

Order and was informed that the defendants' motions for sanctions and dismissal were pending.

On April 27, 2005, Benjamin supplemented her responses to Kleinedler's supplemental interrogatories with more complete and signed answers, as requested of Hall by Kleinedler on June 10, 2004. She also supplemented and signed her answers to Centier's Interrogatories 4, 5, 13, and 17, which Centier had stated were inadequate in its motion to dismiss and for sanctions.

Now proceeding *pro se*, Benjamin asks this court to reconsider its November 4, 2004 Order and to deny the motions for sanctions and dismissal filed by the defendants. She states that her procedural inadequacies, including her failure to show up for two depositions, were the result of Hall's neglect and that she now has remedied the problems pertaining to written discovery by supplementing her answers.

## Discussion

### I. Motion to Set Aside

On November 4, 2004, this court granted Kleinedler's "Motion to Strike Plaintiff's Responses to Defendant and to Deem Requests for Admission Admitted" pursuant to Local Rule 7.1(a), which allows the court to issue a "summary ruling" when a party fails to respond to a pending motion.[2] Benjamin asks that this order

---

[2] Kleinedler's Motion to Strike addressed only Benjamin's failure to sign Kleinedler's supplemental discovery requests and did not seek any relief with respect to Kleinedler's first set of interrogatories and requests for production, which also were outstanding at that time. Additionally, in her motion to dismiss and for sanctions, Kleinedler complained that the first discovery requests were unanswered, but she did not attach those documents to her motion or provide any explanation as to their uniqueness compared to the supplemental requests. Based on the foregoing, as well as the comprehensive

5

be set aside because she was unaware that Hall had not responded adequately and because she has corrected the deficiencies in her responses to the supplemental discovery propounded by Kleinedler. The court treats Benjamin's motion to set aside as a request to reconsider the November interlocutory order.

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. United States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). *See also* *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 275 F.3d 757, 758 n.1 (7th Cir. 2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted). In *Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

> It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

> 56 F.3d at 828

---

nature of the supplemental discovery requests, it appears as though the supplemental discovery Kleinedler propounded on Benjamin may have been intended to replace the first set for discovery requests. Because neither party clarifies this point and Kleinedler's first set for discovery has not been filed for the court's review, the court will resolve any ambiguity by allowing the plaintiff time to respond to all outstanding discovery, as set forth in the body of this Opinion.

*See also* **Heft v. Moore**, 351 F.3d 278, 282 n.1 (7th Cir. 2003); **Retired Chicago Police Association v. City of Chicago**, 76 F.3d 856, 867 (7th Cir. 1996); **LB Credit Corporation v. Resolution Trust Corporation**, 49 F.3d 1263, 1267 (7th Cir. 1995).  When ruling on a motion to reconsider an interlocutory order, district courts have "practically unbridled discretion." **Fisher v. National Railroad Passenger Corporation**, 152 F.R.D. 145, 149 (S.D. Ind. 1993).

A broad "interests of justice" standard guides the district court's discretionary analysis.  **Akzo Coatings, Inc. v. Aigner Corporation**, 909 F.Supp. 1154, 1160 (N.D. Ind. 1995) ("[A] motion to reconsider an interlocutory order may be entertained and granted as justice requires.").  *See also* **Atchley v. Heritage Cable Vision Associates**, 926 F.Supp. 1381, 1383 (N.D. Ind. 1996); **Acme Printing Ink Company v. Menard, Inc.**, 891 F.Supp. 1289, 1295 (E.D. Wis. 1995).  In applying this standard, "the trial court should strive to acquaint itself with the totality of the relevant circumstances" of the case.  **United States v. Roberts**, 978 F.2d 17, 22 (1st Cir. 1992) (noting that the test "covers considerable ground").

The Seventh Circuit places strong emphasis on resolving a case on its merits when determining if reconsideration is within the interests of justice.  *See* **Long v. Steepro**, 213 F.3d 983, 986 (7th Cir. 2000) ("[T]he interests of justice are best served by resolving cases on their merits"); **Del Carmen v. Emerson Electric Company, Commercial Cam Division**, 908 F.2d 158, 163 (7th Cir.

1990) (stating that the Seventh Circuit has a "well-established public policy favoring hearing cases on the merits."). *See also* ***Passarella v. Hilton International Company***, 810 F.2d 674, 678 (7th Cir. 1987); ***Staren v. American National Bank & Trust Company of Chicago***, 529 F.2d 1257, 1263 (7th Cir. 1976) (observing that the "general purpose" of the Federal Rules of Civil Procedure is to ensure "that cases are tried on the merits."). In addition to this presumption, the court may consider seven factors when the issue is one of delay:

> 1) the nature of the case; 2) the degree of tardiness; 3) the reasons underlying the tardiness; 4) the character of the omission; 5) the existence vel non of cognizable preju-dice to the nonmovant in consequence of the omission; 6) the effect of granting (or deny-ing) the motion on the administration of justice; and 7) whether the belated filing would, in any event, be more than an empty exercise.
>
> ***Roberts***, 978 F.2d at 21-22

This list is not exhaustive, and the court should fashion a test based on the facts of the particular case. 978 F.2d at 22. For example, the Seventh Circuit has held that if the party cures the defects which led to the initial order, then the court can be satisfied that the party is not seeking to stall the action, and reconsideration is appropriate. ***Tolliver v. Northrop Corp.***, 786 F.2d 316, 319 (7th Cir. 1986).

Here, justice supports reconsideration of the court's November 4, 2004 Order. Benjamin had no opportunity to learn the

8

problems with her discovery responses or the fact that a motion to strike, and an interlocutory order summarily granting that motion, had been filed until she was served personally with notice to appear on March 22, 2005.  The exhibits provided by all parties in support fo the various motions indicate that Kleinedler only communicated with Benjamin through Hall, as the Rules of Professional Conduct direct.  Kleinedler has not offered any evidence to contradict Benjamin's assertion that both Hall and Hughes totally failed to inform her of the motion to strike and subsequent Order.  Hall's extreme delay in withdrawing as Benjamin's attorney only complicated the situation by postponing the necessity of Benjamin's appearance at status conferences and preventing her from receiving personal service of court filings.  As a direct result of Hall's actions, including his failure to respond to Kleinedler's motion to strike, this court granted the motion summarily rather than on the merits.  Yet approximately one month after learning of the problems with her written discovery at the March 22, 2005 status conference, Benjamin corrected the deficiencies in her supplemental answers that were the subject of the motion to strike.  Under these circumstances, Benjamin now should have an opportunity to present her case.

Nevertheless, Kleinedler argues that Hall's neglect and ineffectiveness do not provide basis for relief as his behavior does not rise to the standard of excusable neglect under Rule 60(b)(1).  Further, she argues that Benjamin's current *pro se* status affords her no relief as she was represented by an attor-

9

ney during the period in question.  See ***Pioneer Inv. Services Co. v. Brunswick Associates***, 507 U.S. 380, 396, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993) ("[C]lients must be held accountable for the acts and omissions of their attorneys.").

The rule of client accountability is true particularly for relief from judgment under Rule 60(b).  See ***Russell v. Delco Remy Division of General Motors Corporation***, 51 F.3d 746, 749 (7th Cir. 1995) ("Attorney failures, for instance, provide no basis for avoiding a judgment under Rule 60(b)."). See also ***Sparrow v. Heller***, 116 F.3d 204, 206 (7th Cir. 1997).  While Benjamin's *pro se* status obligates this court to hold her to less stringent standards for certain procedures than those to which members of the legal profession are held, "*pro se* litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines."  ***Jones v. Phipps***, 39 F.3d 158, 163 (7th Cir. 1994).  See also ***Downs v. Westphal***, 78 F.3d 1252, 1257 (7th Cir. 1996); ***Bates v. Jean***, 745 F.2d 1146, 1150 (7th Cir. 1984).

Although the principle that clients should be held accountable for the actions of their attorneys is important, it must bow to the overriding purpose of the Federal Rules of Civil Procedure in this instance.  Hall's inaction has stalled this case at the discovery stage, before significant resources have been spent by either the parties or the court, and before any determination on the merits has been reached.  Benjamin herself has made every effort to prosecute her case.  No party disputes that Benjamin was en route to her first deposition when Hall told her not to

10

appear or that she never learned that the deposition was rescheduled.  Hall further took responsibility for the cancelled deposition saying "if there is a bad guy here make it me," promised to withdraw quickly, and then failed to do so until nearly eight months after he said he would withdraw and four months after the court ordered it.  (Centier Mot. for Dismissal Exh. A, p. 67)  In addition, Benjamin fully answered all five of defendant Kleinedler's interrogatories and completed, signed, and returned supplemental responses to Centier after learning of the problems with her written discovery.  Benjamin does not seek, nor does this court grant her, special dispensation for the past acts of her attorney because she is now *pro se*.  Rather, by her own actions, Benjamin has displayed her willingness and ability to prosecute her claims.  For these reasons, the court finds that the November 4, 2004 Order should be vacated.

## II.  Motions to Dismiss and for Sanctions

Without stating a legal theory under which this court should proceed, the defendants ask that Benjamin's case be dismissed for her lack of cooperation with discovery.  Therefore, the court shall consider the defendants' motions to dismiss and for sanctions under Federal Rule of Civil Procedure 37(b)(2)(C), which allows the court to enter certain "just" sanctions, including dismissal, in response to discovery violations.

District courts have wide latitude in ordering sanctions.  *See* **Johnson v. Kakvand**, 192 F.3d 656, 661 (7th Cir. 1999).  The Seventh Circuit considers dismissal to be "a very harsh sanc-

11

tion." ***Williams v. Chicago Board of Education***, 155 F.3d 853, 857 (7th Cir. 1998). *See also* ***Marrocco v. General Motors Corp.***, 966 F.2d 220, 223-24 (7th Cir. 1992). Due to its harsh nature, "dismissal with prejudice must be infrequently resorted to by district courts." ***Schilling v. Walworth County Park & Planning Commission***, 805 F.2d 272, 275 (7th Cir. 1986).

Dismissal under Rule 37 is appropriate only if the district court "first considers and explains why lesser sanctions would be inappropriate" and also makes a threshold "finding of willfulness, bad faith or fault." ***Maynard v. Nygren***, 332 F.3d 462, 468 (7th Cir. 2003). To make such a finding, the court must have "clear and convincing evidence" of the party's willful disobedience, bad faith, or fault. ***Maynard***, 332 F.3d at 468. *See also* ***Stewart v. State of Illinois***, No. 01 C 5520, 2003 WL 21939036, at *1 (N.D. Ill. Aug. 12, 2003). In analyzing the evidence, the court considers "the frequency and magnitude of the party's failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." ***Rice v. City of Chicago***, 333 F.3d 780, 784 (7th Cir. 2003) (internal quotations and citations omitted). Furthermore, a district court should not order dismissal for failure to prosecute "without first firing a warning shot or imposing other lesser sanctions." ***Beyer v. Cormier***, 235 F.3d 1039, 1041 (7th Cir. 2000). This principle is especially true if the party is proceeding *pro se*. ***Schilling***, 805 F.2d at 277. When the blame

12

for want of due prosecution falls squarely on the lawyer, the court should sanction the lawyer and not unjustly punish the client through dismissal of the suit.  ***Ball v. City of Chicago***, 2 F.3d 752, 758 (7th Cir. 1993).

In this case, dismissal is not appropriate.  First, Benjamin's efforts to remedy the inadequate discovery responses prepared by her former attorney, to respond fully to outstanding motions, and to seek reconsideration of an order entered as a result of her attorney's negligence belie the notion that she is not proceeding in good faith.  Second, the frequency and magnitude of the discovery problems can hardly be attributed to Benjamin, particularly when her attorney stated on the record that Benjamin's absence at her deposition was his fault.  Third, the delay caused by the circumstances of the case has not been excessive, nor has so much activity occurred that proceeding would burden the schedule of the court.  *See **Schilling***, 805 F.2d at 276 (finding that the trial court abused its discretion by dismissing a case which was 16 months old); ***McKelvey v. AT&T Technologies***, 789 F.2d 1518, 1520-21 (11th Cir. 1986) (finding an abuse of discretion when the trial court dismissed an 18 month old case where the attorney negligently failed to substitute himself as counsel); ***McGowan v. Faulkner Concrete Pipe Company***, 659 F.2d 554, 555-58 (5th Cir. 1981) (holding that the district court abused its discretion by dismissing a two year old case because the court did not consider lesser sanctions first).  Finally, because Benjamin is now *pro se*, it would contravene

13

Seventh Circuit precedent to dismiss her case without at the very least warning her of such a possibility.

In sum, the actions complained of by the defendants were entirely the fault of Benjamin's first attorney and there is no evidence to suggest that Benjamin was complicit.  Hall, however, has withdrawn and therefore cannot be sanctioned.  Nevertheless, given that Benjamin has not acted willfully, has made efforts to correct the discovery problems created by her attorney, and was not warned or given lesser sanctions prior to dismissal, the court finds that justice requires she not be punished for the actions of her attorney.  In recent months, Benjamin has proven her willingness to proceed with the prosecution of her claim while she continues to seek new counsel.  In light of these facts, the court declines to impose the harsh sanction of dismissal on the plaintiff.

Finally, it is not clear whether the plaintiff has answered all outstanding discovery propounded by Kleinedler because of the ambiguity surrounding Kleinedler's first set of discovery requests.  *See* note 2, *supra*.  To the extent that this discovery remains outstanding, Kleinedler shall re-serve it directly on Benjamin.  Benjamin shall have 30 days to respond to these requests pursuant to the Federal Rules of Civil Procedure.  Discovery and dispositive motion deadlines will be reset at the court's status conference on August 12, 2005.

_____

For the foregoing reasons, the Motion to Dismiss filed by the defendant, Centier Bank, on October 8, 2004 is **DENIED**; the Motion for Sanctions filed by Centier on October 8, 2004 is **DENIED**; the Motion to Dismiss filed by the defendant, Suzanne Kleinedler, on October 21, 2004 is **DENIED**; the Motion for Sanctions filed by Kleinedler on October 21, 2004 is **DENIED**; and the Motion to Set Aside Order of November 4, 2004 Granting Defendant, Suzanne F. Kleinedler's Motion to Strike Plaintiffs' Responses to Supplemental Discovery and to Deem Requests for Admission Admitted filed by the plaintiff, Denise Benjamin, on May 5, 2005 is **GRANTED**. The court's Order of November 4, 2004 is **VACATED**. The Motion to Strike which the November 4, 2004 Order granted is hereby **DENIED** fo the reasons set forth in the body of this Opinion.

ENTERED this 9th day of August, 2005

                                        s/ ANDREW P. RODOVICH
                                          United States Magistrate Judge