```
                 UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION

DENISE M. BENJAMIN, BENJAMIN     )
A. HINONSKI and LOTTIE HINONSKI, )
                                 )
          Plaintiffs             )
                                 )
     v.                          )   Case No. 2:03 cv 62
                                 )
CENTIER BANK, N.A., CHICAGO      )
TITLE INSURANCE COMPANY, INC.,   )
and SUZANNE F. KLEINEDLER,       )
                                 )
          Defendants             )
```

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment filed by the defendant, Centier Bank, on August 11, 2005. For the reasons set forth below, this motion is **GRANTED** on the plaintiff's TILA claim, and this case is **DISMISSED WITHOUT PREJUDICE.**

## Background

On April 30, 1999, Peter Benjamin allegedly forged a power of attorney for his then-wife, Denise Benjamin. (Pl. Exh. 1) The same day, Peter entered into two mortgage loans with the defendant, Centier Bank. (Pl. Exhs. 2, 6) These loans were disbursed on April 30 and May 6, 1999. (Complaint ∂∂ 16, 29)

The first mortgage loan to Peter, in the principle amount of $358,000, was secured by a mortgage against the Benjamins'

residence in Schererville, Indiana. (Pl. Exhs. 2, 3) The Benjamins, who held this property as tenants in common, had purchased the residence in 1998 through a first mortgage with NBD Bank. (Complaint ∂ 1; Denise Benjamin Aff. ∂ 4) Denise knew of the first mortgage, and it is undisputed that she was a legitimate co-signor. (D. Benjamin Aff. ∂ 21)

The second loan, which was a commercial loan in the principle amount of $500,000, also was signed by Peter individually and on behalf of Denise through the forged power of attorney. (Pl. Exh. 6) This loan was secured by the Benjamins' residence, as well as a life insurance policy on Peter and property in Marco Island, Florida. (Pl. Exh. 5) The Benjamins and Denise's grandparents, Benjamin and Lotti Hinonski, originally purchased the Marco Island property in 1988. (Def. Exhs. B, C) The Hinonskis either quit claimed their interest in the Marco Island property to the Benjamins, or their signatures were forged by Peter Benjamin, on October 5, 2000. (D. Benjamin Aff. ∂∂ 5, 27) The Benjamins then owned the property as tenants in the entireties until its sale. (D. Benjamin Aff. ∂ 5) At the time of the second mortgage, Denise was paying a mortgage on the Marco Island property to Wells Fargo Home Mortgage. (D. Benjamin Aff. ∂ 10) The Hinonskis' claims have since been dismissed from this case

for lack of prosecution. *See* Orders of January 18, 2006 and February 13, 2006.

Denise first learned of the two mortgages when she was contacted by an attorney for Centier Bank, Lambert Genetos, in August 2000. According to her, Genetos indicated that Peter had fallen in arrears on the commercial loan and that Centier Bank was going to foreclose on both the Benjamins' residence and the Marco Island property if payment was not made. At that time, Genetos did not inform Denise that she was a signatory on the loan. (D. Benjamin Aff. ∂ 10) Denise continued to speak with Genetos regarding the potential foreclosures and related issues through approximately April or early May 2001, but Genetos stated that the loans were made to Peter individually, so neither he nor Centier Bank would provide copies of the mortgage and commercial loan documents to Denise.  (D. Benjamin Aff. ∂ 21) During this period, Denise claims that she "was still under the assumption that the mortgage on [their] marital residence (Schererville Property) was with NBD Bank," although Genetos advised that he was acting on behalf of Centier Bank. (D. Benjamin Aff. ∂∂ 21-22) In October 2000, Genetos made a comment regarding Peter commit-ting bank fraud to Denise's sister, Deborah Mullins, who then

conveyed the comment to Denise.  (D. Benjamin Aff. ∂ 17; Deborah Mullins Aff. ∂ 4)

On February 22, 2001, Denise sold the Marco Island Property. (D. Benjamin Aff. ∂ 23)  On May 7, 2001, Denise sold the Schererville property. (D. Benjamin Aff. ∂ 25) Each of the closing statements included a line item for payment to Centier Bank. (Pl. Exhs. 8, 9)  The May 7, 2001 closing statement specifically called this payment to Centier a "payoff of first mortgage loan." (Pl. Exh. 9)

In April or May 2002, Denise claims that she discovered her forged signature on the loan and mortgage documents when she testified before a Federal Grand Jury regarding Peter's activities. (D. Benjamin Aff. ∂ 27) In September 2002, she obtained the forged power of attorney and recorded mortgages through the County Recorder's Office. (D. Benjamin Aff. ∂ 28) On February 24, 2003, Benjamin and the Hinonskis filed a complaint against Centier, among other parties, alleging that Centier Bank violated the Truth in Lending Act ("TILA"), 15 U.S.C. ßß 1601-1677. The plaintiffs also asserted state law claims for fraud and negligence.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary

4

judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004); ***Windle v. City of Marion, Indiana***, 321 F.3d 658, 660-61 (7th Cir. 2003), *cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. ***Adickes v. S.H. Kress & Company***, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); ***Lawrence***, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); ***Lawrence***, 391 F.3d at 841; ***Hottenroth v. Village of Slinger***, 388 F.3d 1015, 1027 (7th Cir. 2004); ***Palmer v. Marion County***, 327 F.3d 588, 592 (7th Cir. 2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. ***Spiegula v. Hull***, 371 F.3d 928, 935 (7th Cir.

2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved."  *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also* *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999); *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,

149-51, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); *Celotex Corp.*, 477 U.S. at 322-23, 106 S.Ct. at 2553; *Branham*, 392 F.3d at 901; *Lawrence*, 391 F.3d at 841; *Hottenroth*, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Because both Denise and Centier are citizens of Indiana, complete diversity does not exist in this case. *See* 28 U.S.C. ß 1332; *Owen Equipment and Erection Company v. Kroger*, 437 U.S. 365, 368, 98 S.Ct. 2396, 2399, 57 L.Ed.2d 274 (1978). Thus, federal jurisdiction is premised upon the single federal claim asserted by Denise against Centier for violation of TILA, and the state law fraud and negligence claims are pendent. If the TILA claim is barred by the statute of limitations, as Centier argues, then the pendent claims should be dismissed without prejudice, as they are based on facts and legal theories distinct from those relevant to the statute of limitations issue. *See* 28 U.S.C. ß 1367(c)(3). *See also O'Grady v. Village of Libertyville*, 304

F.3d 719, 725 (7th Cir. 2001)(noting that the dismissal of pendent claims is reviewed under the abuse of discretion standard).

TILA provides that a cause of action may be brought under the statute "within one year from the date of the occurrence of the violation." 15 U.S.C. ß1640(e). While Centier suggests that the statute is jurisdictional and thereby an inflexible bar to the plaintiff's claims, the Seventh Circuit follows the majority view that "federal statutes of limitations [are] jurisdictional only when the United States is a defendant." *Lawyers Title Insurance Corporation v. Dearborn Title Corporation*, 118 F.3d 1157, 1166 (7th Cir. 1997).  *See also* *Ellis v. General Motors Acceptance Corporation*, 160 F.3d 703, 706 (11th Cir. 1998); *Salois v. Dime Savings Bank of New York*, 128 F.3d 20, 25-26 (1st Cir. 1997); *Ramadan v. The Chase Manhattan Corporation*, 156 F.3d 499, 502 (3rd Cir. 1997); *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986); *Jones v. TransOhio Savings Association*, 747 F.2d 1037, 1043 (6th Cir. 1984). *Contra* *Hardin v. City Title & Escrow Company*, 797 F.2d 1037, 1039-40 (D.C. Cir. 1986)(stating in dicta that the statute is jurisdictional).  Thus, TILA may be subject to the equitable tolling doctrines.  *See Lawyers Title*, 118 F.3d at 1166.

The concept of equitable tolling must be distinguished from that of accrual, or when the statute of limitations begins to run.  The "discovery rule" applies to the issue of accrual. *See Cada v. Baxter Healthcare Corporation*, 920 F.2d 446, 450-51 (7th Cir. 1991).  As clarified by the Seventh Circuit, "Accrual is the date on which the statute of limitations begins to run." *Cada*, 920 F.2d at 450. Under TILA, the accrual date is linked to the moment the credit transaction is "'consummated', or when credit is extended. . . ." *Nash v. First Financial Savings and Loan Association*, 703 F.2d 233, 239 (7th Cir. 1983). *See also Strecker v. LaSalle Bank, N.A.*, No. 04-C-440-C, 2004 WL 2491596, at *3 (W.D. Wis. Nov. 3, 2004); *Goodloe v. National Wholesale Company, Inc.*, No. 03-C-7176, 2004 WL 1631728, at *12 (N.D. Ill, July 19, 2004).

Denise does not dispute that the statute of limitations accrued on May 6, 1999 (at the latest) for purposes of her TILA claim. Instead, she argues that the statute was tolled in equity. The two equitable tolling doctrines, which "stop the statute of limitations from running even if the accrual date has passed," are equitable tolling and equitable estoppel.  *See Cada*, 920 F.2d at 450-53.  *See also Dauzvardis v. Midwest Generation, L.L.C.*, No. 01 C 8549, 2002 WL 31017436, at *4 (N.D. Ill. Sept. 9, 2002).

Because Denise does not distinguish between these different doctrines, the court will consider her claim under each.

Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence [she] is unable to obtain vital information bearing on the existence of [her] claim." *Cada*, 920 F.2d at 451. *See also* ***Chapple v. National Starch & Chemical Company and Oil***, 178 F.3d 501, 505-06 (7th Cir. 1999). As distinguished from equitable estoppel, equitable tolling does not require any conduct from the defendant to toll the statute of limitations. *See* ***Cada***, 178 F.3d at 452. The doctrine applies an objective "reasonable person" standard to the plaintiff's knowledge. *See* ***Chapple***, 178 F.3d at 506; ***Hentosh v. Herman M. Finch University of Health Sciences/The Chicago Medical School***, 167 F.3d 1170, 1174 (7th Cir. 1999). In addition, equitable tolling does not work to toll the limitations period until the plaintiff is certain that she has a claim against the defendant. *See **Cada***, 920 F.2d at 451; **Dauzvardis**, 2002 WL 301017436, at *4. Rather, "the tolling inquiry asks only whether the plaintiff was unable to learn of the *possibility of its claim* . . . [I]t does not ask whether the plaintiff was unable to obtain solid proof." ***Chapple***, 178 F.3d at 506 (emphasis added). Finally, equitable tolling merely tolls the statute for a "rea-

10

sonable" time; it does not restart the entire statute of limitations to the benefit of the plaintiff. *See* **Unterreiner v. Volkswagon of America, Inc.**, 8 F.3d 1206, 1213 (7th Cir. 1993); **Cada**, 920 F.2d at 452; **Weinandt v. Kraft Pizza Company**, 217 F.Supp.2d 923, 928 (E.D. Wis. 2002).

Equitable estoppel is called "fraudulent concealment" in the context of limitations of action. **Chapple**, 178 F.3d at 506; **Cada**, 920 F.2d at 451. Fraudulent concealment tolls the statute of limitations when "the defendant takes active steps to prevent the plaintiff from suing in time," such as by concealing evidence. **Hentosh**, 167 F.3d at 1174 (*quoting* **Cada**, 920 F.2d at 450-51). This doctrine also incorporates the "discovery rule" by presupposing that the plaintiff has discovered or *should have* discovered the defendant's original wrongdoing. **Cada**, 920 F.2d at 451. *See also* **Weinandt**, 217 F.Supp.2d at 928. Thus, the reasonableness of the plaintiff's reliance on the defendant's subsequent statements must be considered in granting equitable estoppel. *See* **Hentosh**, 167 F.3d at 1174; **Smith v. City of Chicago Heights**, 951 F.2d 834, 840-41 (7th Cir. 1992). The Seventh Circuit has "refused to grant equitable estoppel when the plaintiff retained the ability, notwithstanding the defendant's delay or resistance, to obtain information necessary to pursue [her] claim." **Jackson v.**

*Rockford Housing Authority*, 213 F.3d 389, 395 (7th Cir. 2000). *See also* ***Shropshear v. Corporation Counsel of the City of Chicago***, 275 F.3d 593, 598 (7th Cir. 2001). Assuming equitable estoppel applies, "the court must subtract from the period of limitations the entire period in which the tolling condition is in effect." *Cada*, 920 F.2d at 453.

The doctrine of equitable tolling does not save Denise's TILA claim in this case. First, Denise knew of her ownership interests in the Schererville and Marco Island properties and was paying on mortgages for these properties at NBD Bank and Wells Fargo Home Mortgage. The fact that a third bank, Centier Bank, claimed that it would foreclose on these properties in August 2000 should have notified a reasonable person of the possibility that the bank had somehow attached her interest in the properties without her consent. *See* ***Chapple***, 178 F.3d at 506.

Second, the forged power of attorney and mortgages were of public record. Because Denise apparently knew that she could obtain these documents through the County Recorder's office--as evidenced by the fact that she did obtain copies in 2002--she could not be said to have exercised reasonable diligence in determining the existence of her claim. Even assuming that she did not know how to obtain recorded documents, she had an oppor-

12

tunity to review the mortgage papers when she sold the properties in 2001 to pay off the debt to Centier Bank. And finally, it was not reasonable for Benjamin to wait 10 or 11 months after seeing the forged signatures during her grand jury testimony to file suit. For all these reasons, Denise cannot seek protection under the equitable tolling doctrine.

Although the doctrine of fraudulent concealment fits the facts of this case better than equitable tolling because Centier appears to have actively misrepresented the nature of the loans, this doctrine still does not toll the statute of limitations for the same reasons that equitable tolling cannot apply. Once again, Denise should have discovered Centier Bank's acceptance of the forged signature at the very latest in May 2001, when she sold her residence to avoid foreclosure on a property she knew to be held as tenants in common. At a very minimum, she was on notice to consult an attorney, who could have told her that foreclosure was not possible unless she and her husband both had signed the loan. Moreover, she retained the ability to obtain information to pursue her claim because all of the forged documents were of public record. See *Jackson*, 213 F.3d at 395.

It simply is not reasonable for a person to rely on Centier Bank's statements to the extent that she would sell two proper-

ties to pay off nearly $1 million in debt without any investigation, without contacting an attorney, and without any effort to obtain documents of public record, particularly when the sale documents on those properties show that the properties were mortgaged to Centier Bank.[1]  In any event, fraudulent concealment tolls the statute of limitations during the period the concealing activity takes place. *See* **Cada**, 920 F.2d at 453. Denise's affidavit states that these representations ended in early May 2001, when she stopped corresponding with Genetos. (D. Benjamin Aff. ∂ 21)  Even if fraudulent concealment were to give her a full year after this date to file suit, Benjamin's claim is at least ten months overdue.

---

For the foregoing reasons, the Motion for Summary Judgment filed by the defendant, Centier Bank, on August 11, 2005 is **GRANTED** on the plaintiff's TILA claim.  The court declines to exercise jurisdiction over the pendent state claims.  The state law claims are **DISMISSED WITHOUT PREJUDICE.**

---

[1] The Benjamins also owed $100,000 to her sister and brother-in-law, in addition to the $500,000 and $358,000 loans.

ENTERED this 15th day of February, 2006

                                    s/ ANDREW P. RODOVICH
                                    United States Magistrate Judge